UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 10-20196-CR-KING

UNITED STATES OF AMERICA,

v.

YIMMI BELLAIZAC-HURTADO, et al.,

Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION
## TO DISMISS INDICTMENT

**THIS CAUSE** comes before the Court upon the February 11, 2011 Report and Recommendation ("R&R") of Magistrate Judge Ted E. Bandstra (DE #96), recommending that Defendants' Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute (DE #61)[1] be denied. Defendants timely filed Objections to the Magistrate's Report and Recommendations on Defendants' Motion to Dismiss (DE #99) on February 22, 2011, as well as a Supplemental Objection (DE #106), filed February 25, 2011.[2] The Government filed a Response in Opposition to Defendants' Objections (DE

---

[1] The Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute (DE #61) was originally filed by Defendant Yimmi Bellaizac-Hurtado. (DE #61). All three co-defendants moved to adopt/join in the Motion to Dismiss on the ground that the constitutional and jurisdictional issues raised in the Motion apply equally to them. Judge Bandstra granted those motions, and issued the R&R recommending denial of the Motion to Dismiss as to all four defendants. (DE #96 at 1 n.1).

[2] Both the original Objections and Supplemental Objection were filed by Defendant Yimmi Bellaizac-Hurtado. (DE #99, DE #106). Defendant Gonzalez-Valois joined in the initial Objections February 22, 2011. (DE #100). Defendants Angulo-Rodallega and Riascos-Hurtado

#107) February 27, 2011. Defendant Yimmi Bellaizac-Hurtado filed a Reply to the Government's Response in Opposition (DE #111) March 1, 2011. The Court has thoroughly considered the R&R, the Defendants' Objections, the Government's Response, and Defendant's Reply. Defendants and the Government have submitted extensive briefings on the objections to the R&R, and the Court considers those objections *de novo*. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). After a careful review of the record, the Court concludes that the R&R contains well-reasoned recommendations, and should be affirmed and adopted.

## I.     Background

Defendants were indicted March 25, 2010, and charged with conspiracy to possess cocaine and possession of cocaine with intent to distribute, in violation of the Maritime Drug Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502 et seq. (DE #1). The statute prohibits the possession with intent to distribute a controlled substance on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a). The MDLEA defines a "vessel subject to the jurisdiction of the United States," in relevant part, to include: "a vessel without nationality; [and] a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(A) and (E). The R&R found that both these statutory jurisdictional prerequisites were met in

---

took the same action February 23, 2011. (DE # 103, 104).

this case. (DE #96 at 4–5). Defendants objected, arguing that the MDLEA is unconstitutional as applied to this case because Congress has no authority to criminalize drug trafficking within the territorial waters of a foreign state. More specifically, Defendants argue that the R&R overlooked critical law on this issue. In addition, Defendants objected on the ground that the R&R impermissibly shifted the burden of disproving statelessness of the vessel onto Defendants.

## II.   Discussion

### A.   Constitutionality of the MDLEA

The R&R chiefly addresses Defendant's argument that the Maritime Drug Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502 et. seq., was enacted pursuant to the so-called "High Seas" clause of the United States Constitution, and is therefore unconstitutional as applied to this case. Article 1, section 8, clause 10 of the United States Constitution provides: "The Congress shall have Power . . . [t]o define and punish Piracies and Felonies committed on the high seas, and Offenses against the Law of Nations." Defendants argue that because they were neither arrested on the high seas, nor indicted for conduct taking place on the high seas, Congress does not have authority to proscribe their conduct, and therefore, the MDLEA is unconstitutional as applied to them. The Government argued in response, and the R&R found, that the MDLEA is also grounded in the "Offenses against the Law of Nations" language in Article I, and is therefore constitutional. Although there is "no clear

authority directly on point,"[3] Judge Bandstra recommended that the MDLEA should not be found unconstitutional as applied to this case. (DE #96 at 8–9). Defendants object to this finding on several grounds.

### 1.   Section 70505 of the MDLEA

First, Defendants argue that "the R&R fails to recognize that Congress expressly divorced the MDLEA from reliance on the Law of Nations." (DE #99). Defendants point to section 70505 of the MDLEA, which provides, in part:

> A person charged with violation section 70503 of this title . . . does not have standing to raise a claim of failure to comply with international law as a basis for a defense. . . . A claim of failure to comply with international law in the enforcement of this chapter may be made only by a foreign nation. A failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.

46 U.S.C. § 70505.

The R&R does not address this provision. The Government did not respond to the arguments in Defendants' Objections based on this provision. However, Section 70505 of

---

[3]There are a number of cases from this Circuit interpreting the constitutionality of the MDLEA. *See, e.g., United States v. Salcedo-Ibarra*, Case No. 8:07-CR-49-T-27TGW, 2009 WL 1953399 (M.D. Fla. July 6, 2009) (prosecution of conspirator never physically "on board" ship subject to United States jurisdiction constitutional); *United States v. Garcia*, 182 Fed. App'x 873, 877 (11th Cir. 2006) (criminalization of conduct on high seas without nexus to United States constitutional); *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002) (MDLEA penalty provision constitutional). However, there is no case law on the specific issue presented here—whether Congress may "define and punish" drug trafficking in the territorial waters of another country as a domestic crime. *See* DE #96 at 8. ("This truly appears to be a case of first impression involving the constitutionality of the MDLEA as applied in a 'territorial waters' context.").

the MDLEA does not alter the outcome recommended by the R&R.

The crux of Defendant's argument is that because a district court may exercise jurisdiction under the MDLEA even if it would result in a violation of international law, the MDLEA must not have been enacted pursuant to the "Law of Nations" clause. This is an overly broad reading of Section 70505. This provision does not, as Defendants contend, authorize the United States to engage in wholesale violations of international law in criminal prosecutions. Rather, this provision simply limits the actors that have standing to challenge the validity of an MDLEA prosecution on international law grounds. Under section 70505, only foreign nations have standing to make such claims. It necessarily follows that standing to claim noncompliance with international law is thus denied to individuals, like Defendants here, absent state intervention. It does *not* necessarily follow that the MDLEA was enacted without regard to principles of international law. Instead, this statutory limitation on standing is fully consistent with a traditional understanding of the "Law of Nations." *See, e.g., Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) ("Offenses against the law of nations principally involved the rights or interests of whole states or nations, and did not necessarily involve the private interests of individuals seeking relief in court."); *United States v. Noriega*, 746 F.Supp. 1506, 1533 (S.D. Fla. 1990) (explaining in the context of a criminal case, "as a general principle of international law, individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereign involved"); *Ware v. Hylton*, 3 U.S. 199, 160–61 (1796) (finding that only national

governments, not individuals, could claim violations of international treaty).

Accordingly, the Court finds that section 70505 of the MDLEA does not signify Congressional intent to "divorce[] the MDLEA from reliance on the Law of Nations." Rather, section 70505 expressly incorporates traditional notions of standing under international law into the statute. This section of the statute thus does not provide a basis to conclude that Congress was acted outside its power to "define and punish . . . offenses against the Law of Nations" in enacting the MDLEA. U.S. Const., Art. I, s. 8, cl. 10.

### 2. Eleventh Circuit Precedent

Defendants further object on the basis that the Eleventh Circuit held in *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002), "that international law is not the basis for Congress's Article I authority to enact the MDLEA." (DE #99 at 5). In *Tinoco*, the Eleventh Circuit addressed the "jurisdictional element" of the MDLEA requiring consent from a foreign government to prosecute foreign nationals found on flagged foreign vessels on the high seas. *Id.* at 1107–10. The issue before the Court was whether this requirement was "an essential element of the MDLEA substantive offense [that had] to be submitted to the jury for proof beyond a reasonable doubt." *Id.* at 1109–10. The Eleventh Circuit found that it was not. *Id.* In a footnote, the Court stated:

> Our decision in this case should not be read as answering the more difficult question of whether Congress could label as non-elements of an offense those so-called "jurisdictional" provisions that are inserted into statutes for the purpose of providing Congress with substantive authority under Article I of the Constitution to regulate the conduct at issue. . . .With respect to the present

case, it is clear . . . that the . . . jurisdictional requirement is not a necessary prerequisite for Congress's exercise of extra-territorial jurisdiction over drug trafficking activities that occur in international waters.

*Id.* at 1110, n.21.

Defendants are presumably analogizing the governmental consent requirement in *Tinoco* to the similar requirement applicable here, that a foreign government consent to enforcement of United States law by the United States to a vessel in the foreign nation's territorial waters. *See* 46 U.S.C. § 70502(c)(1)(E). They argue that in the *Tinoco* footnote, the Eleventh Circuit held that "international law was not the basis of Congress's 'substantive authority under Article I of the Constitution to regulate the conduct at issue' in the MDLEA." (DE #99).

This is inaccurate. The footnote draws the distinction between statutory jurisdictional requirements and constitutional jurisdictional requirements, and finds that the consent requirement in the MDLEA is statutory. To illustrate, the footnote goes on to compare the "jurisdictional element" in the MDLEA to provisions in federal criminal statutes like the Hobbs Act, 18 U.S.C. § 1951(a) and the Travel Act, 28 U.S.C. § 1952(a) that "require[] a particularized, case-by-case factual finding that some product or activity of the defendant relate in some way to interstate commerce." *Tinoco*, 304 F.3d at 1110 n.21. Those provisions are "inserted into the statute to provide Congress with substantive authority under Article I of the Constitution." *Id.* The *Tinoco* Court found only that the requirement of government consent to a prosecution of persons onboard a vessel flying its flag was not of

this latter, jurisdiction-creating type. The footnote cited by Defendants does not pass on whether the MDLEA was enacted pursuant to the "High Seas" language or the "Law of Nations" language of Article I, clause 8, section 10. It does not, as Defendants argue, state that "international law was not the basis" of Congress's legislative authority to enact the MDLEA. The footnote simply notes that Congress's Article I authority to legislate was not dependent upon the governmental consent requirement written into the MDLEA. Accordingly, the footnote has no bearing on the constitutional issues in the instant case. As explained above, the MDLEA is constitutional as applied to this case if Defendants' conduct constitutes an "offense against the Law of Nations." Defendants have cited no authority, and the Court has found none, for the proposition that the presence or absence of governmental consent would be determinative of this issue. The language cited from *Tinoco* is therefore inapposite.[4]

Finally, Defendants argue that all the cases relied upon by the R&R are distinguishable because "the issue *sub judice* was neither presented, nor considered, by the courts expressing the opinions relied on by the R&R." (DE #99 at 11). However, the R&R repeatedly acknowledged that this case presents an issue of first impression. (DE #96 at 3, 5, 7, 8). Because by definition, no cases have decided this exact issue, the cases must be distinguishable on some level. However, Judge Bandstra, in a well-reasoned analysis,

---

[4] At a later point in Defendant's Objections, Defendants concede that *Tinoco* is not on point: "Similarly, *Tinoco* . . . did not address either an international law or an Article I challenge." (DE #99 at 10).

8

determined that the distinguishable facts in the relevant cases did not warrant a different outcome. The Court has reviewed and considered the R&R's analysis, and finds that Defendant's objections are not persuasive. The R&R's implicit findings that the "protective principle" and the "universality principle" of international law support the constitutionality of the MDLEA are sound. *See, e.g., United States v. Saac*, - - F.3d - -, 2011 WL 414995, *5–6 (11th Cir. 2011) (finding international drug trafficking subject to universal jurisdiction); *United States v. Estupinan*, 453 F.3d 1336, 1339 (11th Cir. 2006) ("[T]he trafficking of narcotics is condemned universally by law-abiding nations."); *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) ("Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that reasonably developed legal systems.'").

Furthermore, in enacting the MDLEA, Congress found that "trafficking in controlled substances aboard vessels is an international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. These express Congressional findings are not accompanied by any qualifier that drug trafficking is only problematic if discovered on the high seas. Accordingly, the Court finds the Defendants' presence in the territorial waters of Panama does not signify that an "offense against the Law of Nations" was not committed. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) (cautioning that courts should be "particularly wary of impinging on the

discretion of the Legislative and Executive Branches in managing foreign affairs").

## B.    Statutory Jurisdiction

Finally, Defendants argue that the R&R erred in finding the MDLEA's statutory requirements for jurisdiction were met. More specifically, Defendants object on the ground that the R&R "implies that the defendants bear any burden with respect to establishing a lack of jurisdiction over the vessel. The Eleventh Circuit has held that the Government bears the burden of establishing jurisdiction over the vessel." (DE #106 at 1) (citation omitted). The R&R did not place the burden on the defendants to establish a lack of jurisdiction. Rather, the R&R relied on a Certification from the United States Department of State, which

> establishes that the Government of the United States has determined that the vessel was without nationality for purposes of 46 U.S.C. § 70502(d)(1); and that Panama by Diplomatic Note dated April 9, 2010, consented 'to the enforcement of the United States law by the United States' with respect to this case as provided for in 46 U.S.C. § 70502(c)(1)(E).

(DE #96 at 4).

The MDLEA provides that "consent or waiver of objection by a foreign nation to enforcement of United States law by the United States under paragraph (1)(C) or (E) . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(c)(2)(B). Accordingly, the R&R did not find that defendants had the burden to establish lack of jurisdiction. Rather, it correctly found that the Government has met its burden of establishing jurisdiction under the MDLEA.

10

## III. Conclusion

After a careful review of the record and the Court being otherwise fully advised, it is hereby **ORDERED, ADJUDGED, and DECREED** that Magistrate Judge Ted E. Bandstra's February 11, 2011 Report and Recommendation **(DE #96)** be, and the same is, hereby **AFFIRMED and ADOPTED**. Defendants' Motion to Dismiss Indictment Based on Lack of Jurisdiction and Unconstitutionality of the Statute **(DE # 61)** is **DENIED.** The above-styled action will proceed, and **SHALL** be set for trial by separate Order of the Court.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 7th day of March, 2011.

_____
JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: **_Counsel for the United States:_**

**Dustin M. Davis**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9083
Fax: 305-536-4699
Email: Dustin.Davis@usdoj.gov

**_Counsel for Defendants:_**

**Stewart Glenn Abrams**
Federal Public Defender's Office
150 W Flagler Street

Miami, FL 33130-1556
305-536-6900
Fax: 530-7120
Email: Stewart_Abrams@fd.org

**Albert Zachary Levin**
Albert Z. Levin
261 NE First Street
6th Floor
Miami, FL 33132
305-379-7101
Fax: 305-372-0052
Email: alevinlaw@aol.com

**Philip Robert Horowitz**
Philip R. Horowitz
9130 South Dadeland Boulevard
Suite 1910 - Two Datran Center
Miami, FL 33156
305-670-1915
Fax: 305-670-1901
Email: HorowitzDefense@aol.com

**Orlando do Campo**
do Campo & Thornton, P.A.
Bank of America Tower
100 S.E. 2nd Street
Suite 2700
Miami, FL 33131
305-358-6600
Fax: 305-358-6601
Email: od@dandtlaw.com

*Judge Bandstra* [signature]